UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NOCO COMPANY, | ) | CASE NO. 1:22-cv-851 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET M. BRENNAN |
| v. | ) | |
| | ) | |
| JASPER INDUSTRIAL SUPPLY, INC., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

Before this Court is Defendant Jasper Industrial Supply, Inc's motion to set aside default. (Doc. No. 14.) Plaintiff Noco Company opposed this motion (Doc. No. 16), and Defendant filed a reply brief in support of its motion (Doc. No. 17). For the reasons that follow, this motion is GRANTED, and the Clerk's Entry of Default (Doc. No. 11) is VACATED.

### I. Background

Plaintiff designs, manufactures, and sells battery chargers, portable power devices, and related battery accessories. (Doc. No. 1 at PageID 2, ¶ 5.) In connection with its business, Plaintiff owns proprietary image, design, and content copyrights and registered trademarks, including the marks NOCO GENIUS and ULTRASAFE. (*Id.* at PageID 5, ¶ 19.) On May 23, 2022, Plaintiff initiated the above-captioned case. (*Id.*) Plaintiff's complaint alleges that Defendant has sold Plaintiff's products and used its trademarks without Plaintiff's authorization or consent. (*Id.* at PageID 8, ¶ 33.) The complaint contains claims for unfair competition, trademark infringement and dilution, tortious interference with contract, and deceptive trade

1

practices under Ohio law.  (*Id.* at PageID 1, ¶ 1.)

On June 2, 2022, Defendant was served by the clerk via certified mail.  (Doc. No. 5.) Defendant failed to timely respond to Plaintiff's complaint.  Plaintiff filed its application for entry of default on July 28, 2022 (Doc. No. 8), and the Clerk entered Defendant's default on August 25, 2022 (Doc. No. 11).  Plaintiff moved for default judgment, seeking permanent injunctive relief, declaratory relief, and reimbursement of attorney's fees.  (Doc. No. 10.)  On September 30, 2022, Defendants moved to set aside the Clerk's entry of default.  (Doc. No. 14.)

## II. Discussion

### A. Applicable Law

Fed. R. Civ. P. 55(c) provides that "[t]he court may set aside an entry of default for good cause[.]"  Rule 55(c) leaves to the discretion of the trial judge the decision whether to set aside an entry of default.  However, "[t]rials on the merits are favored in federal courts and a 'glaring abuse' of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default."  *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 846 (6th Cir. 1983) (citation omitted).

Three equitable factors are considered in determining whether good cause has been shown: "(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced."  *Burrell v. Henderson*, 434 F.3d 826, 831-32 (6th Cir. 2006) (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992) (citing *United Coin Meter Co.*, 705 F.2d at 845)). Although "[a]ll three factors must be considered in ruling on a motion to set aside entry of default," when a defendant has a meritorious defense and the plaintiff would not be prejudiced,

2

"it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead." *Shepard Claims Serv., Inc. v. Wm. Darrah & Assoc.*, 796 F.2d 190, 194 (6th Cir. 1986).

### B. Settlement Communications

As an initial matter, Plaintiff argues that this Court should strike the portions of Defendant's motion that disclose the contents of certain communications between Plaintiff and Defendant. (*See* Doc. No. 16 at PageID 204-06.) Plaintiff notes that these communications constitute evidence of compromise offers and settlement negotiations and, thus, are impermissible evidence under Fed. R. Evid. 408. (*See id.*) Defendant counters that these communications are not barred by Fed. R. Evid. 408 because they were not offered to prove or disprove the validity of Plaintiff's claim. (*See* Doc. No. 17 at PageID 217.) Plaintiff's argument is not well-taken.

Fed. R. Evid. 408, titled "Compromise Offers and Negotiations," provides:

(a) Prohibited Uses. Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

> (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and

> (2) conduct or a statement made during compromise negotiations about the claim – except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408. Relevant here, parties are only prohibited from introducing evidence of

3

compromise offers and settlement negotiations for two reasons: (1) to prove or disprove the validity or amount of a disputed claim or (2) to impeach by a prior inconsistent statement or a contradiction.  *Id.*

Defendant did not disclose settlement communications or compromise offers for a purpose prohibited by Fed. R. Evid. 408.  Defendant first introduced the communications in the motion's background section to establish a timeline of Defendant's president, Brent Atkins, attempts to resolve the dispute.  (*See* Doc. No. 14-1 at PageID 136-43.)  The motion then references these communications again in the section establishing that its default was not willful due to Mr. Atkins' mistaken belief that this dispute would be resolved without formal litigation.  (*See id.* at PageID 144-45.)  Defendant also introduced these communications to argue that Plaintiff would not be prejudiced by setting aside default, as, it argues, they show that Defendant has not spoiled any potentially relevant evidence.  (*Id.* at PageID 146.)  Introducing these communications for these purposes is expressly allowed by the Fed. R. Evid. 408(b) because Defendant is attempting to negate the inference that it has caused the court and Plaintiff undue delay.  *Willer v. DT Grp. Dev., Inc.*, No. 8:13-cv-81, 2014 WL 2559243, at *2 n. 2 (D. Neb. June 5, 2014).  Notably, Defendant did not reference these communications in the section of the motion attempting to show that Defendant has meritorious defenses.  (*See* Doc. No. 14-1 at PageID 147-52.)

Accordingly, the Court considers these compromise offers and settlement communications in reviewing the parties' briefs.

### C. Analysis

#### 1. Whether Defendant's conduct was culpable conduct

"To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard*, 796 F.2d at 194. "[M]ere negligence or failure to act reasonably is not enough to sustain default." *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 327 (6th Cir. 2010).

Defendant asserts that this factor favors setting aside default because the conduct causing delay was motivated by non-lawyer Mr. Atkins' belief that he could efficiently resolve this dispute without the Court's intervention. (*See* Doc. No. 14-1 at PageID 145-46.) Plaintiff counters that Defendant's conduct was willful because Mr. Atkins knew about the complaint and intentionally chose to shirk his obligations to respond to the complaint mandated by the Federal Rules of Civil Procedure. (*See* Doc. No. 16 at PageID 196-97.)

This factor supports setting aside the Clerk's entry of default. Defendant decided to informally resolve the dispute without the aid of counsel in lieu of formally defending himself in this action. While unwise, such conduct is not evidence of Defendant's "intent" to "thwart" or a "reckless disregard" towards this judicial proceeding. *Shepard*, 796 F.2d at 194. This is especially true given that soon after being notified of the Clerk's entry of default, Mr. Atkins obtained counsel who filed the motion to set aside default. (Doc. No. 14-1 at PageID 143.)

#### 2. Whether Defendant has a meritorious defense

"In determining whether a defaulted defendant has a meritorious defense '[l]ikelihood of success is not the measure.'" *United Coin Meter Co.*, 705 F.2d at 845 (quoting *Keegel v. Key*

5

*West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980)). "Rather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." *Id*. (citing *Rooks v. Am. Brass Co.*, 263 F.2d 166, 169 (6th Cir. 1959)). Put another way, if the moving party has "a hint of a suggestion, which if proven at trial, would constitute a complete defense," the party has shown that this factor favors setting aside the entry of default. *$22,050.00 U.S. Currency*, 595 F.3d at 326 (quotations and citations omitted).

Defendant argus that this factor favors setting aside the entry of default because it has (1) a personal jurisdiction defense, (2) a "first-sale" defense on the trademark claims, (3) a defense regarding the inadequacy of the trademark dilution claim, and (4) a pure-economic loss defense on the tortious interference claim. (*See* Doc. No. 17 at PageID 212-14; Doc. No. 14-1 at PageID 149.) Plaintiff contends that none of these defenses are viable. (*See* Doc. No. 16 at PageID 198-204.)

After reviewing the parties' arguments, the Court finds that this factor favors setting aside the entry of default. Defendant has offered "a hint of a suggestion" that it has defenses to the claims alleged in Plaintiff's complaint. *U.S. Currency*, 595 F.3d at 326. Take, for example, the parties' briefing on the trademark claims. Plaintiff posits that the "first-sale exemption" does not apply because the lack of warranties on the products that Defendant allegedly sold renders the products "materially different" than Plaintiff's. (Doc. No. 16 at PageID 202.) But Defendant rightfully counters that Plaintiff does not show that a lack of warranty, as a matter of law, always disposes of the "first-sale exemption." Nor did Plaintiff respond to Defendant's arguments regarding the inadequacy of the trademark dilution claims. In the end, the viability of Defendant's defenses to Plaintiff's trademark claims is a matter "better decided on a fuller

record and a formal motion to dismiss." *NextStep Arthropedix, LLC v. Fries*, No. 5:20-cv-2125, 2021 WL 2635388, at *4 (N.D. Ohio June 25, 2021).

### 3. Whether Plaintiff will be prejudice

Ordinarily, "delay alone is not a sufficient basis for establishing prejudice." *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987) (citation omitted). "Rather, it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Id.* (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (further citation omitted)).

Plaintiff argues that it has shown that setting aside default would cause more prejudice than mere delay because allowing this case to proceed "allows Defendant to put off the issuance of an injunction and buy time to sell off its inventory of infringing products." (*See* Doc. No. 16 at PageID 198.) This speculation is not well taken. Defendant provided the Court with the declaration of Mr. Atkins stating that Defendant already agreed to cooperate with Plaintiff on halting the sale of any alleged infringing products until there is a resolution of this action. (Doc. No. 14-2 at PageID 156, ¶ 12.)

Accordingly, the Court finds that this factor favors setting aside the entry of default.

### III. Conclusion

Having found that all three factors favor setting aside the Clerk's entry of default, the Court GRANTS Defendant's motion (Doc. No. 14) and VACATES the Clerk's entry of default (Doc. No. 11). The Court will hold a telephonic status conference on January 19, 2023, at 2:00 p.m. If necessary, the Court will set a deadline for Defendant to file a response to Plaintiff's complaint at the status conference. The parties are ORDERED to notify the Court immediately

if a resolution is reached before January 19, 2023.

      **IT IS SO ORDERED.**

**Date**: December 19, 2022

                                               BRIDGET MEEHAN BRENNAN
                                               UNITED STATES DISTRICT JUDGE