IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NOCO COMPANY, | ) | CASE NO. 1:22-cv-00851 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| JASPER INDUSTRIAL SUPPLY, INC., | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

Before this Court is Defendant Jasper Industrial Supply, Inc.'s ("Jasper") motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. (Doc. No. 21.) Plaintiff Noco Company ("Noco") moved unopposed for jurisdictional discovery, and the Court granted leave to conduct such discovery. (Doc. Nos. 23, 25.) After the close of jurisdictional discovery, the parties completed briefing Jasper's motion to dismiss. (Doc. Nos. 35, 36.) For the reasons that follow, the Court concludes that it lacks personal jurisdiction over Jasper. Accordingly, the Court GRANTS Jasper's motion to dismiss without reaching Jasper's arguments regarding venue and failure to state a claim.

### I. Background

#### A. Factual Background

Noco makes and sells battery chargers, portable power devices, and related products and accessories. (Doc. No. 1 at ¶ 5.) As part of its marketing efforts for those products, Noco has registered several trademarks, such as marks for "NOCO GENIUS" and "ULTRASAFE." (*Id.* at ¶ 19.) Noco sells some of its products directly to consumers, but Noco also sells to wholesalers and authorized resellers. (*Id.* at ¶¶ 26–28, 31.) When Noco works with authorized resellers, it

enters into contracts with those resellers that limit the resellers' ability to make bulk sales or resell Noco products to wholesalers. (*Id.*)

Jasper is an Indiana corporation based in Indiana. (*Id.* at ¶ 6; Doc. No. 14-2 at ¶ 3.) Noco alleges that Jasper sold Noco products without authorization. (Doc. No. 1 at ¶ 33.) On information and belief, Noco claims that Jasper purchases Noco products from resellers in Ohio and that Jasper makes sales to retail consumers in Ohio using a Walmart storefront. (*Id.* at ¶¶ 35, 39–42.) Based on Jasper's alleged sales of Noco products, Noco raises claims for trademark infringement and dilution, trademark-related unfair competition and deceptive business practices, and tortious interference with reseller contracts. (*Id.* at ¶¶ 54–113.)

### B. Procedural Background

On May 23, 2022, Noco filed the complaint in this case. (*Id.*) Jasper failed to timely respond, so the Clerk entered default on August 25, 2022. (Doc. No. 11.) Subsequently, Jasper moved to set aside the default. (Doc. No. 14.) The Court granted Jasper's motion and vacated the default. (Doc. No. 19.)

On February 16, 2023, Jasper filed its motion to dismiss. (Doc. No. 21.) Noco then sought jurisdictional discovery, which Jasper did not oppose. (Doc. No. 23.) The Court granted the requested discovery. (Doc. No. 25.) During the course of discovery, Noco twice moved for extensions of the discovery deadline. (Doc. Nos. 28, 30.) The Court granted the first extension. (Doc. No. 29.) But it denied the second. (Doc. No. 34.) In seeking a second discovery extension, Noco argued that an extension would allow the parties to discuss settlement and that Jasper's discovery responses were not due until two days after the discovery deadline. (Doc. Nos. 30, 32.) But as the Court explained when denying the second extension, settlement discussions are no excuse for skirting discovery obligations, and Jasper's late response was an

issue of Noco's own making. (Doc. 34 at 310–11.)[1] Shortly after the close of discovery, the parties completed briefing the motion to dismiss. (Doc. Nos. 35, 36.)

## II. Discussion

### A. Legal Standard

District courts have discretion in deciding how to resolve motions to dismiss for lack of personal jurisdiction. A district court "may rely 'upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.'" *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

Regardless of the court's choice, "[t]he party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). However, the court's choice of procedure affects the weight of the burden. When the court "'rules on written submissions alone[,]' the burden consists of 'a *prima facie* showing that personal jurisdiction exists.'" *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). But when the court conducts an evidentiary hearing, the burden is a preponderance of the evidence. *Id.*

The applicable burden is not fully settled for situations where, like here, courts have allowed some discovery but have not held an evidentiary hearing. *Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x 473, 480 n.5 (6th Cir. 2015). In *Schneider v. Hardesty*, the Sixth Circuit held that the prima facie standard generally applies in such situations. 669 F.3d at 698–99. The *Schneider* court left open the possibility, though, that preponderance of the

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

evidence might apply when there is "no real dispute as to the facts or to the extent of discovery." *Id.* at 698 (internal quotations omitted) (quoting *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)). That is, there might be an exception to the prima facie standard in those "rare instances" where the party asserting personal jurisdiction "has been granted all discovery requested *and* that discovery resulted in an undisputed set of facts such that an evidentiary hearing would be pointless." *Id.* at 699 (emphasis added).

In this case, Noco has not received all discovery requested. The Court denied Noco's second request for a discovery extension. (Doc. No. 34.) Moreover, Noco contends that Jasper's productions were deficient. (Doc. No. 35 at 331–32; Doc. No. 35-2.) Noco is responsible for its failure to timely ensure compliance with its requested discovery.[2] And the existence of these unresolved discovery issues means that the *Schneider* exception cannot apply. Therefore, the Court evaluates personal jurisdiction under the prima facie standard.

To make a prima facie showing of personal jurisdiction, Noco need only "establish[] with reasonable particularity sufficient contacts between [Jasper] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. Cal. Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In assessing Noco's prima facie case, the Court considers the evidence "in a light most favorable to [Noco]" and does not weigh "the controverting assertions of the party seeking dismissal." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017) (quoting *Theunissen*, 935 F.2d at 1459).

---

[2] It is not clear whether and how the dispute over Jasper's allegedly deficient discovery responses was resolved. Noco never filed a motion to compel, perhaps because the deadline to file such motions passed by the time Noco raised its discovery dispute with Jasper. *See* LR 37.1(b). But if that is so, the failure to meet the deadline is due to Noco's lack of diligence, as the Court explained in denying a second extension of discovery deadlines. (*See* Doc. No. 34.)

### B. Personal Jurisdiction

The Court may exercise personal jurisdiction over Jasper only if Jasper is "amenable to service of process under [Ohio's] long-arm statute and if the exercise of personal jurisdiction would not deny [Jasper] due process." *Bird*, 289 F.3d at 871 (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Here, the Court concludes that personal jurisdiction would not be consistent with due process.[3]

Personal jurisdiction can be either general or specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Because Noco argues only for specific jurisdiction, the Court limits its analysis to specific jurisdiction. (*See* Doc. No. 35 at 324–28.)

The Sixth Circuit applies a three-part test to determine whether specific personal jurisdiction comports with due process. "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023) (emphasis removed) (quoting *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016)). Second, "the claims must arise out of or relate to the defendant's contacts with the forum." *Id.* (internal quotations omitted) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ----, 141 S. Ct. 1017, 1025 (2021)). And third, "the acts of the defendant or consequences caused by the defendant must have a

---

[3] Historically, Ohio's long-arm statute was "not coterminous with federal constitutional limits." *Bird*, 289 F.3d at 871. Recently though, the Ohio General Assembly amended the long-arm statute to also permit "personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C). Ohio courts have not yet ruled on the effect of this amendment, and federal district courts have been split on their interpretations of the amendment. *See Predictive Conversations, LLC v. Leica Geosys., Inc.*, No. 5:22-cv-311, 2023 WL 4052471, at *3 (N.D. Ohio June 16, 2023) (collecting cases). Since the Court finds that personal jurisdiction would be inconsistent with due process, it is unnecessary for the Court to address Ohio's long-arm statute. Therefore, the Court expresses no opinion regarding the ongoing debate over the long-arm statute's meaning.

5

substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* (quoting *AlixPartners*, 836 F.3d at 549–50).

The Court finds that Noco has failed to make a prima facie case at any step of the test.

1. **Purposeful Availment**

A defendant purposefully avails itself of a forum when it "act[s] or cause[s] a consequence" in the forum such that it "invoke[s] the benefits and protections" of that forum's law. *MAG IAS Holdings*, 854 F.3d at 900. The requirement of purposeful availment is "more aspirational than self-defining," but years of judicial experience have uncovered four principles that now guide the Court. *Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 917–18 (6th Cir. 2019) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)).

First, the defendant's forum contacts must be intentional. Purposeful availment requires the defendant to have "*deliberately* reached out beyond its home" into the forum. *Ford*, 141 S. Ct. at 1025 (emphasis added) (internal quotations and citation omitted). Contacts that are no more than "random, fortuitous, or attenuated" are not enough. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations and citation omitted).

Second, the defendant's forum contacts must be of sufficient significance. The defendant must have "created a 'substantial connection' with the forum state by engaging in 'significant activities within [the] State,' or by creating 'continuing obligations' to residents in that state." *MAG IAS Holdings*, 854 F.3d at 900 (alteration in original) (quoting *Burger King*, 471 U.S. at 475–76). Substantiality does not require any specific type of contact. For example, forum contacts can be substantial even when the defendant is not physically present in the forum, though physical presence is relevant to the analysis. *Id.* (citing *Burger King*, 471 U.S. at 476;

6

and *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Instead, whether forum contacts are sufficiently substantial depends on the "quality of the contacts, and not their number or status." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) (cleaned up) (citation omitted). That said, "[a] single deal with an in-forum resident [] does not by itself suffice." *Power Invs.*, 927 F.3d at 918 (citing *Burger King*, 471 U.S. at 478); *see also Neogen*, 282 F.3d at 891 (explaining that a "one-time, unlikely-to-be-repeated" deal did not create personal jurisdiction).

Third, purposeful availment depends on the "contacts that the 'defendant *[it]self*' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King*, 471 U.S. at 475). Because personal jurisdiction focuses on the defendant, contacts between a plaintiff or third party and the forum state cannot establish minimum contacts. *Id.*

Fourth, and relatedly, purposeful availment "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. While the "defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," the Supreme Court has explained that the "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286.

Applying these four guiding principles, the Court finds that Noco has failed to make a prima facie case of purposeful availment. Jurisdictional discovery has revealed that Jasper has no warehouses in Ohio. (Doc. No. 35-1 at 338.) In fact, Noco has offered no evidence that Jasper has any physical presence in the state. Jasper's only contacts with Ohio are its website and online Walmart storefront. (Doc. No. 35 at 320; Doc. No. 1-2.)

An online commercial presence can be sufficient to establish purposeful availment, but not in this case. To determine whether a website creates personal jurisdiction, the Sixth Circuit uses the *Zippo* test. *Neogen*, 282 F.3d at 890. Under this test, "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Id.* (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Thus, courts applying *Zippo* place websites on a "sliding scale" from passive to interactive. *Id.* (quoting *Zippo*, 952 F. Supp. at 1124). The more interactive a website, the more likely it is that personal jurisdiction is proper. *Id.*

Where a website sits on the *Zippo* scale depends on the level of actual interaction between a defendant and forum residents. The *Zippo* court explained that websites are interactive, and personal jurisdiction is proper, when the defendant does business with forum residents, such as by "enter[ing] into contracts with residents . . . that involve the knowing and repeated transmission of computer files over the Internet." *Zippo*, 952 F. Supp. at 1124. So, for instance, the defendant in *Zippo* purposefully availed itself of Pennsylvania when it consciously chose to process 3,000 subscriptions and payments that it received from Pennsylvania residents through its website, and to assign those subscribers passwords. *Id.* at 1121, 1126. Likewise, the Sixth Circuit has centered its interactivity inquiry on the question of whether a defendant conducts business with residents through its website. *See Neogen*, 282 F.3d at 890–91 (the granting of passwords to forum residents as part of a contract for a defendant's services weighs in favor of purposeful availment); *Bird*, 289 F.3d at 874 (accepting business from 4,666 forum residents through a website is enough interactivity to establish purposeful availment); *Zoya Co. v. Julep Nail Parlor Co.*, No. 1:11-cv-1702, 2011 WL 5975054, at *3 (N.D. Ohio Nov. 29, 2011)

(the most important factor for purposeful availment is whether forum residents actually ordered products from the defendant, and whether the defendant actually sold products to forum residents through its website).

On the other hand, a website is passive, and personal jurisdiction is not proper, when that website "does little more than make information available to those who are interested." *Zippo*, 952 F. Supp. at 1124. By their nature, websites can be accessed from almost anywhere. *Neogen*, 282 F.3d at 890. So, "[t]he maintenance of [a] website, in and of itself, does not constitute [] purposeful availment." *Id.* The contact from a website's mere availability on the internet is "an 'attenuated' contact that falls short of purposeful availment." *Id.* (citation omitted); *cf. Bird*, 289 F.3d at 874 ("Furthermore, the fact that [a defendant] maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction."). For example, a defendant does not purposefully avail itself of a forum through its website when there is no evidence that any forum residents contacted the defendant through its website, or that any of the defendant's sales occurred in the forum. *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 523 (6th Cir. 2006).

A website sits in the middle of the *Zippo* scale when "a user can exchange information with the host computer," but that user has not necessarily conducted business with the defendant. *Zippo*, 952 F. Supp. at 1124; *see also Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005) (finding a website to be semi-interactive when it provided contact information and "arguably solicit[ed] support" from those who visited the website).

The Court finds that Jasper's website and Walmart storefront are semi-interactive. Both the website and Walmart storefront are capable of interacting with customers and are capable of conducting sales. (*See* Doc. No. 1-2; Doc. 35 at 320.) The problem for Noco's theory of

9

personal jurisdiction is that the evidence shows that all of Jasper's sales of Noco products were to non-Ohio residents. (Doc. No. 35-1 at 348–64.) Absent any "commercial connection" between Jasper and Ohio, the simple fact that Jasper's website and storefront had interactive capabilities is not enough to establish purposeful availment. *Noco Co. v. Doe*, No. 1:19-cv-2260, 2020 WL 836757, at *4 (N.D. Ohio Feb. 20, 2020) (citation omitted); *see also Imago Eyewear*, 167 F. App'x at 523 (no purposeful availment when there was no contact with forum residents or forum sales through a website); *Cadle*, 123 F. App'x at 678 (semi-interactive website did not establish purposeful availment when there was no exchange of information between the defendant and forum residents over the website). That is especially so when there is no evidence that any Ohio resident even used the interactive features on Jasper's website and storefront. *See Kraemer v. WhizCut Am. Inc.*, No. 1:16-cv-2364, 2017 WL 2119342, at *4 (N.D. Ohio May 16, 2017) (no personal jurisdiction when no Ohio residents used any of the interactive features of the defendant's website). Under these circumstances, Jasper's website and storefront functioned more like passive sources of information than interactive webpages. As such, Jasper's contacts with Ohio are not substantial enough to support purposeful availment.

Nor is there any other indication that Jasper deliberately targeted Ohio residents through its website and storefront. Noco has not pointed to any statement or advertising on Jasper's website or storefront through which Jasper "holds itself out as welcoming [Ohio] business," or through which Jasper represents to consumers that it does business in Ohio. *Neogen*, 282 F.3d at 891. Even if that evidence existed, purposeful availment would still be "a close question" at best. *Id.* Without any indications that Jasper was specifically targeting Ohio, the Court cannot conclude that any of Jasper's contacts with Ohio were deliberate.

10

Finally, Noco suggests that Jasper has sufficient contacts with Ohio because Jasper injured Noco in Ohio and because Jasper tortiously interfered with an Ohio contract between Noco and a third-party reseller. (Doc. No. 35 at 323–24.) But those are not Jasper's contacts with Ohio. They are Noco's and the third-party reseller's contacts with Ohio. Such contacts are not properly considered to establish personal jurisdiction over Jasper. *See Walden*, 571 U.S. at 285–86.

Accordingly, the Court concludes that Jasper did not purposefully avail itself of an Ohio forum.

### 2. Arise Out Of or Relate To

Due process also requires that a plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum." *Ford*, 141 S. Ct. at 1025 (internal quotations and citation omitted). This standard does not necessarily require a causal connection between the defendant's contacts and plaintiff's claims. While "[t]he first half of that standard asks about causation[,] the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 1026.

Of course, the "relate to" inquiry "does not mean anything goes." *Id.* There are "real limits" that "protect defendants foreign to a forum." *Id.* In practice, "relate to" means that the defendant's forum contacts are of the same type that gave rise to the plaintiff's claims, even if the actions that created those claims occurred outside the forum.

To illustrate, consider the Supreme Court's decision in *Ford Motor Company v. Montana Eighth Judicial District Court*. 141 S. Ct. 1017. There, the plaintiffs alleged that their Ford vehicles were defective. *Id.* at 1028. Ford had advertised, sold, and serviced the allegedly defective car models in Montana and Minnesota for years, clearly establishing purposeful

11

availment. *Id.* The only complication was that Ford originally sold the specific vehicles at issue outside of Montana and Minnesota, so the plaintiffs' claims were not caused by Ford's forum contacts. *Id.* at 1029. Nonetheless, the Supreme Court held that Montana and Minnesota could exercise personal jurisdiction over Ford because Ford's forum contacts in marketing and selling those car models gave Ford "clear notice" that it could be subject to the forum courts' jurisdiction when those car models malfunctioned in the forums. *Id.* at 1030.

The Sixth Circuit's recent decision in *Sullivan v. LG Chem, Ltd.* demonstrates the same. 79 F.4th 651. In that case, the plaintiff was injured by one of LG Chem's batteries, called 18650 batteries. *Id.* at 657. LG Chem conducted business in Michigan regarding 18650 batteries, and LG Chem also shipped 18650 batteries into Michigan. *Id.* at 673. Even though it was not clear in *Sullivan* whether the 18650 battery that injured the plaintiff was one of the batteries shipped into Michigan or whether it came from another state, LG Chem "had fair notice that it could be sued in Michigan for the Michigan consequences of defects relating to its 18650 battery." *Id.* Thus, the Sixth Circuit found personal jurisdiction to be proper. *Id.* at 674.

Here, none of Noco's claims arise from Jasper's contacts with Ohio. Noco's claims fall into two general categories. First are trademark-related claims, which include most of Noco's claims. Second is Noco's claim for tortious interference with contract. (*See* Doc. No. 1.)

Trademark violations occur "where the passing off of the allegedly infringing goods occurred." *CompuServe*, 89 F.3d at 1267 (citing *Dakota Indus. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1388 (8th Cir. 1991)). In turn, "passing off" occurs "where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Dakota Indus.*, 946 F.2d at 1388 (quoting *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d. Cir. 1956)).

12

Because Jasper did not sell any Noco products in Ohio, Noco's trademark-related claims were not caused by any of Jasper's Ohio contacts.

In similar fashion, Noco's tortious interference with contract claim does not arise from Jasper's Ohio contacts. Noco alleged that Jasper interfered with reseller contracts that limited the ability of authorized resellers to sell Noco products to non-consumer third parties. (Doc. No. 1 at ¶¶ 78–84.) So, a tortious interference claim arises only when a Noco product is sold. Again, since there is no evidence that Jasper was involved with any sales of Noco products in Ohio, whether to or from Jasper, Noco's tortious interference claim was not caused by Jasper's Ohio contacts.

The Court also concludes that none of Noco's claims relate to Jasper's Ohio contacts. As the Court has repeatedly noted, there is no evidence that Jasper conducted any transactions related to Noco products in Ohio. Jasper may have made Noco products accessible for customers to purchase from its website and Walmart storefront, but without any actual purchases in Ohio, mere accessibility cannot establish personal jurisdiction. *See Neogen*, 282 F.3d at 890 (a website's mere availability is an attenuated contact not relevant to the personal jurisdiction inquiry).

Thus, the Court finds that Noco's claims do not arise from or relate to Jasper's Ohio contacts.

### 3. Reasonableness

The last step in the due process inquiry is to determine whether exercising personal jurisdiction would be reasonable. In assessing reasonableness, courts consider multiple factors, including: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution

13

of the policy." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554–55 (6th Cir. 2007).

The first and fourth factors both weigh against reasonableness. Jasper is an Indiana corporation based in Indiana (Doc. No. 1 at ¶ 6), so litigating in Ohio would be a substantial burden. *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005). And Indiana has a strong interest in this suit because Jasper is based in Indiana and would have directed the allegedly unlawful activity from Indiana. By contrast, the second factor is neutral. Ohio has some interest in this dispute because Noco is an Ohio resident (Doc. No. 1 at ¶ 13), but that interest is mitigated because none of Jasper's allegedly unlawful activity occurred in Ohio. *Intera Corp.*, 428 F.3d at 618. Only the third factor weighs in favor reasonableness because Noco has a substantial interest in obtaining relief. *Id.* at 619.

On balance, then, it would not be reasonable for the Court to exercise personal jurisdiction over Jasper.

### C. Discovery Issues

As a closing argument, Noco asserts that the Court should allow this case to move forward because Jasper's responses to jurisdictional discovery were deficient. (Doc. No. 35 at 331–32.) At the outset, it is far from obvious that there is any additional relevant discovery left, or that additional discovery would support personal jurisdiction. But there is a more fundamental problem with Noco's argument. Even assuming that there is undiscovered evidence that might support personal jurisdiction, it was Noco's burden to bring that evidence to the Court's attention. *Bird*, 289 F.3d at 871 (the proponent of personal jurisdiction bears the burden of establishing that personal jurisdiction is appropriate). And it was Noco's responsibility to diligently conduct discovery to find that evidence in time to meet case deadlines. As the Court explained above, Noco failed to diligently conduct discovery, and its inability to compel further

productions from Jasper stems directly from that failure.  Noco has offered no authority supporting its position that, due to discovery failures fully within its control, the Court can find personal jurisdiction exists when Noco has otherwise failed to meet its burden.  As such, this discovery dispute does not justify allowing this case to continue.

### III. Conclusion

The Court finds that it lacks personal jurisdiction over Jasper, so it does not reach Jasper's arguments regarding venue or failure to state a claim.  *See Intera Corp.*, 428 F.3d at 621 ("Furthermore, upon a determination that personal jurisdiction is lacking, a court should not dismiss a case on the merits . . . .").  The Court GRANTS Jasper's motion to dismiss and DISMISSES this case without prejudice.

**IT IS SO ORDERED.**

**Date:** December 12, 2023

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE